IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


SANDRA GOODNO, individually
and on behalf of all others
similarly situated, and
ANTHONY REBHOLZ, individually
and on behalf of all others
similarly situated,

        Plaintiffs,

v.                            CIVIL ACTION NO. 5:20CV100
                                   (Judge Kleeh)


ANTERO RESOURCES CORPORATION,

        Defendant.

---

PATRICK MICHAEL WRIGHT,
PATRICIA SUSAN WRIGHT,
DEBORAH ANN COX,
RICHARD L. ARMSTRONG,
DONALD R. REYNOLDS, and
DEBORAH L. WYCKOFF,

        Plaintiffs,

v.                            CIVIL ACTION NO. 1:20CV222
                                 (Judge Kleeh)


ANTERO RESOURCES CORPORATION,

        Defendant.

---

BRAXTON MINERALS III, LLC,
STEVEN CROWE,
DEBORAH CROWE, and
JJGLG PROPERTIES, LLC,

        Plaintiffs,

v.                            CIVIL ACTION NO. 1:21CV119
                                 (Judge Kleeh)

**MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION**

ANTERO RESOURCES CORPORATION,

      Defendant.

**MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION**

Pending before the Court are *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 51, 5:20cv100] filed by Plaintiffs Sandra Goodno, et al.; *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 49, 1:20cv222] filed by Plaintiffs Patrick Wright, et al.; and *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 20, 1:21cv119] filed by Plaintiffs Braxton Minerals III, LLC, et al. For the following reasons, the motions are **DENIED**.

## I. PROCEDURAL BACKGROUND

### A. Goodno, et al., v. Antero, 5:20cv100 ("Goodno action")

On May 22, 2020, Plaintiffs filed their Class Action Complaint [ECF No. 1] against Antero Resources Corporation ("Antero"). Antero filed its motion to dismiss and/or strike class allegation on June 26, 2020. ECF No. 15. The Court entered its First Order and Notice on June 29, 2020. The motion to dismiss being fully briefed, the Court granted in part and denied in part the motion, dismissing Count II of the complaint. ECF No. 23. Thereafter, the Court considered Antero's motion to transfer case [ECF No. 20] and Plaintiffs' response in opposition [ECF No. 22] and granted the

motion, transferring the case to the Honorable United States District Judge Irene M. Keeley on August 6, 2020. ECF No. 27.

The parties submitted their Rule 26(f) reports [ECF Nos. 29, 30] and the Court set a scheduling conference by telephone. ECF No. 31. Thereafter the Court directed the parties to file their proposed requests related to the scope of class discovery. ECF No. 35. The parties stipulated to amend the class action complaint and the Court entered that agreed order on January 8, 2021. ECF No. 40. On April 12, 2021, Plaintiffs filed a motion for leave to file second amended complaint [ECF No. 41] and then withdrew that motion [ECF No. 42]. On April 16, 2021, Plaintiffs filed another motion for leave to file second amended complaint [ECF No. 43] to which Antero responded in opposition [ECF No. 44]. Plaintiffs replied in response on May 16, 2021 [ECF No. 45], and the Court set the motion for hearing. ECF Nos. 48, 50. On July 23, 2021, Plaintiffs filed the instant motion to consolidate in which they request the Court consolidate the Goodno action with the Wright action. ECF No. 51. On August 25, 2021, Plaintiffs again withdrew their motion for leave to file second amended complaint [ECF No. 64].

On September 9, 2021, the case was stayed pending final resolution of the appeal in Corder v. Antero Resources Corp. ECF No. 72. On September 30, 2022, the action was transferred to the Honorable Thomas S. Kleeh, United States Chief District Judge. ECF

3

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION

No. 73. On January 27, 2023, the parties filed a joint notice of the final decision in Corder. ECF No. 74. On February 1, 2023, the Court lifted the stay. ECF No. 75.

**B. Wright, et al. v. Antero, 1:20cv222 ("Wright action")**

On September 10, 2020, Plaintiffs, by counsel, filed their Class Action Complaint against Antero [ECF No. 1] and then, as a matter of course, filed a First Amended Class Action Complaint on October 14, 2020. ECF No. 2. The Court entered its First Order and Notice on November 12, 2020. ECF No. 6. On November 25, 2020, Antero filed its motion for partial dismissal [ECF No. 7], which was opposed by Plaintiffs [ECF No. 13], further supported by Antero [ECF No. 14] and granted in part and denied in part on February 9, 2021. ECF No. 18. Specifically, Count I and all claims brought by Deborah Cox as a former owner of oil and gas interests in the 142-acre tract located on Lesson's Run and the 49.68 acre tract located on Long Run and Wilhelm's Run were dismissed. ECF No. 18. The parties submitted their Report of Rule 26(f) [ECF No. 15] and discovery ensued.

On July 2, 2021, Antero filed a motion to stay. ECF No. 43. Plaintiffs filed the pending Motion to Consolidate on July 23, 2021, in which they request the Court consolidate the Wright action with the Goodno matter. ECF No. 49. On August 31, 2021, by agreed order, the case was stayed pending final resolution of the appeal

**MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION**

in <u>Corder v. Antero Resources Corp</u>. ECF No. 55. On September 30, 2022, the action was transferred to the Honorable Thomas S. Kleeh, United States Chief District Judge. ECF No. 61. On January 27, 2023, the parties filed a joint notice of the final decision in <u>Corder</u>. ECF No. 62. On February 1, 2023, the Court lifted the stay. ECF No. 63.

### C. **<u>Braxton Minerals III, LLC, et al. v. Antero</u>**, 1:21cv119 (**"<u>Braxton Minerals</u> action"**)

Plaintiffs Braxton Minerals III, LLC, Steven Crowe, and Deborah Crowe, by counsel, filed their complaint against Antero on August 25, 2021. ECF No. 1. On September 10, 2021, Plaintiffs filed their First Amended Class Action Complaint against Antero as a matter of course. ECF No. 9; <u>see</u> Fed. R. Civ. P. 15(a)(1). The parties filed a joint request to stay and extend the time for Antero to answer or otherwise respond to the First Amended Class Action Complaint. ECF No. 10. The Court stayed the case on September 15, 2021, pending final resolution of the appeal in <u>Corder v. Antero Resources Corp</u>. ECF No. 14. On September 30, 2022, the action was transferred to the Honorable Thomas S. Kleeh, United States Chief District Judge. ECF No. 16.

On January 27, 2023, the parties filed a joint notice of the final decision in <u>Corder</u>. ECF No. 17. On February 1, 2023, the Court lifted the stay and entered a first order and notice. ECF

Nos. 18, 19. On February 14, 2023, Plaintiffs filed the pending Motion to Consolidate Cases in which they request the Court consolidate the Braxton Minerals action with the Wright and Goodno matters. ECF No. 20. On April 14, 2023, Plaintiffs filed the Second Amended Class Action Complaint [ECF No. 40] after receiving consent of Antero [ECF No. 39]. Fed. R. Civ. P. 15(a)(2). On May 5, 2023, Antero filed its motion to dismiss [ECF No. 44].

## II.  FACTS

### A. Goodno, et al., v. Antero, 5:20cv100 ("Goodno action")

Plaintiffs Sandra Goodno and Anthony Rebholz, on behalf of themselves and a Class of similarly situated individuals, as lessors, allege ownership of oil and gas interests in West Virginia, subject to existing oil and gas leases assigned to Antero. See ECF No. 39, Am. Class Action Compl.; ECF No. 40.[1] Plaintiffs in the Goodno action allege specifically that Antero breached its duty to pay them royalties based upon prices received

---

[1] On January 8, 2021, the Court entered the parties' *Stipulation and Agreed Order to Amend Class Action Complaint and Plaintiffs' Proposed Discovery Request* [ECF No. 40] in which the parties agreed to strike the lease attached as Exhibit 3 to the Class Action Complaint [ECF No. 1-3], "strike any and all references express or implied to the Murray lease or Antero Form Lease attached as Exhibit 3," and strike the declaratory judgment cause of action. ECF No. 40 ¶¶ 1-3. The Amended Class Action Complaint is included as an attachment to ECF No. 39.

on the sale of natural gas and natural gas liquids ("NGLs") at the point of sale. ECF No. 39, Am. Class Action Compl., ¶ 10.

The two leases subject of this action include identical royalty provisions. Plaintiffs allege the royalty provisions govern "Antero's payment obligation on sales of natural gas and NGL products." Id. ¶ 22. This provision states:

> The Lessee shall deliver to the credit of the Lessor free of cost, in the pipeline to which he may connect his wells, the equal one-eighth (1/8) part of all oil and gas produced and saved from leased premises, payable quarterly[.]

Id. Plaintiffs and Class Members assert this language binds Antero to pay them "royalties based upon prices received by Antero on its sale of natural gas and natural gas liquid products at the point of sale, without deduction of post-production costs, pursuant to" controlling West Virginia case law. Id. ¶ 25; see Estate of Tawney v. Columbia Natural Resources, L.L.C., 633 S.E. 2d 22 (W. Va. 2006); Wellman v. Energy Resources, Inc., 557 S.E. 2d 254 (W. Va. 2001). Specifically, Plaintiffs allege Antero is not authorized to deduct post-production costs under the lease language and pursuant to Tawney and Wellman. Plaintiffs allege Antero deducted those unauthorized post-production costs.

### B. Wright, et al. v. Antero, 1:20cv222 ("Wright action")

Plaintiffs Wright, Cox, Armstrong, Reynolds, and Wyckoff, on behalf of themselves and a class of similarly situated individuals,

filed their First Amended Class Action Complaint [ECF No. 2] against Antero alleging breach of oil and gas leases. Specifically, Plaintiffs allege Antero breached its leases with lessors by deducting post-production expenses without authorization. Id. at ¶¶ 31-390.

There are a number of leases included in the First Amended Class Action Complaint. Plaintiffs Patrick Wright ("Mr. Wright"), Patricia Wright ("Ms. Wright"), Deborah Cox ("Cox"), Richard Armstrong ("Armstrong"), and Donald Reynolds ("Reynolds"), receive royalty payments from the flat rate leases identified as Exhibits 37, 46, 51-53, and 56-60. ECF No. 2, ¶ 432. All plaintiffs receive royalty payments from leases with a market enhancement clause identified as Exhibits 3-5, 7-20, 22-24, 26-36, 48-49, 63-34, and 71-74. Id. ¶ 433. Additionally, all plaintiffs receive royalty payments based on proceeds of production without deduction or free of costs leases identified as Exhibits 1-2, 6, 21, 25, 38-39, 40-45, 47, 50, 54-55, 61-61, and 65-70. Id. ¶ 434.

According to Plaintiffs, there are seven (7) common lease royalty provisions among the leases. Id. at ¶ 12(a)-(g). This language includes:

> a) Flat Rate Lease Provision No. 1: "[Lessee] covenants and agrees: 1st – To deliver to the credit of the first parties their heirs, executors, administrators and assigns, free of cost, in the pipeline to which party of the

second part may connect its wells, the equal 1/8 part of all oil produced and saved from the leased premises; and 2nd – to pay Seventy five Dollars each three months in advance for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises"; or

b) Flat Rate Lease Provision No. 2: "Excepting and reserving, however, to the first parties the one eighth part of oil produced and saved from said premises, to be delivered in the pipe line with which second party may connect his wells, normally…If gas only is found, second party agrees to pay two hundred Dollars each year for the product of each well while the same is being sold off the premises, and gas, free of cost for household use on the premises in any of first parties houses. First parties to furnish their own connections. …" or

c) Flat Rate Lease Provision No. 3: [Lessee] covenants and agrees: 1st – To deliver in the pipe lines to the credit of the first party [or parties] his [their] heirs or assigns, free of cost, the equal 1/8 part of all oil produced and save from the leased premises, and 2nd – to pay One Hundred dollars per year for the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises…" or

d) Gross Proceeds Lease Provision with Antero: "It is agreed between the Lessor and Lessee that, notwithstanding any language to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, compressing, processing, transporting, and marketing the oil, gas and any other products produced hereunder to transform the product into marketable form; however, any such costs which

result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual costs of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee."; or

e) Gross Production Lease Provision Prior to 1980 No. 1: "In consideration of the premises the Lessee covenants and agrees to deliver to the credit of the Lessor, free of cost, in the pipe line to which the Lessee may connect its wells a royalty of the equal one-eighth (1/8) part of all oil produced from the leased premises, and to pay for each gas well from the time and while the gas is marketed at the rate of one-eighth (1/8) of the wholesale market value thereof at the well based upon the usual price paid therefor in the general locality of the leased premises, payable each three (3) months…"

f) Gross Production Lease Provision Prior to 1980 No. 2: "In Consideration of the Premises the said Lessee covenants and agrees: 1st – To deliver to the credit of the Lessors their [his] heirs or assigns, free of cost, in the pipe line to which the said Lessee may connect its wells, a royalty of the equal 1/8 part of all oil produced and saved from the said leased premises; 2nd – to pay the equal one-eighth (1/8) of all money received from sale of gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises…"

g) Gross Production Lease Provision Prior to 1980 No. 3: …"In Consideration of the Premises the said Lessee covenants and agrees: 1st – To deliver to the credit of the Lessors their heirs or assigns, free of cost, in the pipe line to which the said Lessee may connect its wells, their proportionate share of the equal 1/8 part of all oil produced and saved from

10

the said leased premises; and, second, to pay
the proportionate share of one-eighth (1/8) of
the value at the well of the gas from each and
every gas well drilled on said premises, the
product from which is marketed and used off
the premises, while the gas from said well is
so marketed and used. …

…It is agreed by the parties hereto that the
Lessee, its successors or assigns shall have
the right to use off the farms for such
purposes as it may desire "Casing Head Gas"
(being gas produced from wells on the
premises) but said "casing head gas" or any
part thereof should be manufactured into
gasoline, or other by-products by said
company, said Lessors shall receive their
proportionate share of the one-eighth of the
net value at the factory of the gasoline and
other by-products so manufactured."

ECF No. 2, First Am. Class Action Compl., ¶ 12(a)-(g). The
complaint goes on to exclude various parties including those who
have leases which meet the Class definition as set forth in Romeo,
et al. v. Antero Resources Corporation, 1:17cv88. Id. ¶ 12(g).
Plaintiffs contend that "[u]nder each of the Lease Agreements
described in the Class definition, Antero has the same implied
duty to market the gas, and the same royalty payment obligations
to the royalty payees, as it does to the Plaintiffs under each of
the Leases referenced above." Id. ¶ 440. And because none of the
royalty provisions at issue expressly permit the deduction of post-
production costs, Plaintiffs contend, Wellman and Tawney impose a
duty on Antero to calculate royalties based on the price it

receives from third parties for the residue gas and NGLs without deductions. Id. ¶ 441. Plaintiffs allege Antero breached this duty. Id.

### C. Braxton Minerals v. Antero, 1:21cv119 ("Braxton Minerals" action)

Plaintiffs Braxton Minerals, LLC ("Braxton Minerals"), Steven Crowe, Deborah Crowe, and JJGLG Properties, LLC ("JJGLG"), bring the action on behalf of themselves and others similarly situated, alleging breach of contract after Antero, the lessee, allegedly breached its contracts with lessors by failing to pay Plaintiffs and potential class members royalties based upon prices received by Antero at the point of sale without deduction of post-production costs. ECF No. 40, Second Am. Class Compl., ¶ 53.

Braxton Minerals acquired 19 leases and is paid royalties by Antero. Id. ¶ 19. The royalty provisions are, in pertinent parts:

> [S]hall pay Lessor one-eighth (1/8) of the proceeds for all gas and casinghead gas produced and sold from the premises, payable monthly; [ECF No. 42-1]
>
> The Lessee shall deliver to the credit of the Lessor free of cost, in the pipeline to which he may connect his wells, the equal one-eighth (1/8) part of all oil and gas produced an saved from leased premises, payable quarterly; [ECF No. 42-2, 42-3]
>
> To pay the equal one-eighth (1/8) of all money received from sale of gas from each and every gas well drilled on said premises, the product of which is marketed and used off the premises; [ECF No. 42-4, 42-5, 42-6]

12

and shall pay Lessor the equal one-eighth part for all gas and casing head gas produced and sold from the premises, payable monthly; [ECF No. 42-7]

To pay the equal one-eighth (1/8) part of all money received from sale of gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said payment to be made within sixty days after commencing to market the gas therefrom as aforesaid and to be paid each three months thereafter while the gas from said well or wells is so marketed and used; [ECF No. 42-8, 42-9]

on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used beyond the well or for the extraction of gasoline or other product, an amount equal to one-eighth of the net amount realized by Lessee computed at the wellhead from the sale of such substances. On gas sold at the well, the royalty shall be one-eighth of the amount realized by Lessee from such sale; [ECF No. 42-10]

And second, to pay their proportionate share of one-eighth (1/8) of the value at the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm; [ECF No. 42-11, 42-12, 42-13, 42-14, 42-15, 42-16, 42-17, 42-18]

Steven and Deborah Crowe acquired a lease with Antero with a royalty provision as follows:

and shall pay Lessor one-eighth (1/8) field market value for all gas and casinghead gas produced and sold from the operations, payable monthly; [ECF No. 42-19]

13

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION

Finally, JJGLG acquired leases with Antero with the following royalty provisions:

> It is agreed between the Lessor and Lessee that, notwithstanding any language herein to the contrary, all oil, gas or other proceeds accruing to the Lessor under this Lease or by state law shall be without deduction, directly or indirectly, for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; [ECF No. 42-20, 42-21]

> to pay monthly Lessor's proportionate share of one-eighth (1/8th) of the value of the well of the gas from each and every gas well drilled on said premises, the product from which is marketed and used off the premises, said gas to be measured at a meter set on the farm, and to pay monthly Lessors' proportionate share of the one-eighth (1/8th) of the net value at the factory of the gasoline and other gasoline products manufactured from casinghead gas; [ECF No. 42-22]

> Lessee shall pay as royalty to 100% of the royalty owners one-eighth (1/8) of the Net Proceeds for Oil and Gas produced and sold from the Premises. "Net Proceeds" is herein defined as the actual monies received from the purchasers of Lessee's Oil and Gas and may be after gathering, processing and transportation if charged by purchaser; [ECF No. 42-23]

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION

### III. <u>LAW</u>

**A. Legal Standard**

Rule 42 of the Federal Rules of Civil Procedure governs requests for consolidation. That rule provides "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a). The Fourth Circuit has identified the following factors to consider:

> proper application of Rule 42(a) requires the district court to determine "whether the specific risks of prejudice and possible confusion" from consolidation "were overborne by the risk of inconsistent adjudications ..., the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

<u>Campbell v. Boston Scientific Corp.</u>, 882 F.3d 70, 74 (4th Cir. 2018) (citation omitted). Consolidation motions are left to the discretion of district courts. <u>See</u> <u>id.</u>

**B. Applicable Law**

"An oil and gas lease must satisfy <u>Tawney</u>'s three-pronged test to rebut the <u>Wellman</u> presumption that the lessee will bear

all post-production costs." _Young v. Equinor USA Onshore Props., Inc._, 982 F.3d 201, 207 (4th Cir. 2020). Under West Virginia law, an oil and gas lessee has an implied duty to market the product produced and "bears all post-production costs incurred until the product is first rendered marketable, unless otherwise indicated in the subject lease." _SWN Prod. Co., LLC v. Kellam_, 875 S.E.2d 216, 221 (W. Va. 2022) (citing _Wellman_, 557 S.E.2d at 256, syl. pts. 4 and 5). For a lessee to deduct any post-production costs from a lessor's royalty payments, the lease must expressly allocate such costs to the lessor and the lessee must prove that the costs were actually incurred and reasonable. _Wellman_, 577 S.E.2d at 265.

In keeping with _Wellman_'s default rule, _Tawney_ set forth three basic requirements to rebut the presumption that the lessee bears all post-production costs: the lease must (1) "expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale;" (2) "identify with particularity the specific deductions that the lessee intends to take from the lessor's royalty;" and (3) "indicate the method of calculating the amount to be deducted from the royalty for such post-production costs." _Tawney_, 633 S.E.2d at 30. These principles were recently reaffirmed in _SWN Production Co., LLC v. Kellam_, 875 S.E.2d 216 (W. Va. 2022). There, the court held that _Tawney_

16

**MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION**

remained good law and that whether a particular lease satisfies the Wellman and Tawney requirements "is a question of contract interpretation guided by principles of contract law." Id. at 227.

In the decades since West Virginia became a marketable product state in Wellman, courts in this district have had ample opportunity to interpret and apply West Virginia's oil and gas precedent. Many of these decisions have addressed whether the holdings of Wellman and Tawney, involving leases with proceeds-based royalty provisions, extend to leases with another type of royalty provision. In each of these cases the Court concluded that the Wellman and Tawney requirements extend to leases containing market value-based royalty provisions. See e.g., Goodno v. Antero Res. Corp., 2020 WL 13094067 (N.D.W. Va. July 21, 2020); Cather v. EQT Production Co., 2019 WL 3806629 (N.D.W. Va. August 13, 2019); Corder v. Antero Res. Corp., 322 F. Supp. 3d 710, 719 (N.D.W. Va. 2018); Romeo v. Antero Res. Corp., 2018 WL 4224452, *4 (N.D.W. Va. Sept. 5, 2018). The Court of Appeals of the Fourth Circuit reached the same conclusion in Corder v. Antero Resources Corp., 57 F.4th 384, 393-94 (4th Cir. 2023). Addressing the royalty provision in a proceeds lease, the court held that the principles established in Wellman and Tawney were not limited to proceeds leases. Finally, under West Virginia law, leases with flat rate royalty provisions are governed by West Virginia Code §

17

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION

22-6-8(e). <u>SWN Prod. Co., LLC v. Kellam</u>, 875 S.E.2d 216, 225 (W. Va. 2022).

## IV.   DISCUSSION

Because individual oil and gas lease interpretations are required for the Court to determine whether the controlling law has been satisfied, the Court declines to consolidate the actions. A lease being subject to <u>Tawney</u> means an individualized contract interpretation of each lease is required. <u>SWN Production Co., LLC v. Kellam</u>, 875 S.E.2d 216, 217 (W. Va. 2022). There are approximately 100 leases amongst these three actions. Despite the number of leases included in the class complaints, there are 19 common lease royalty provisions among the leases.

First, in the <u>Wright</u> action, 37 of the leases have a market enhancement royalty provision that is identical to the market enhancement royalty provision at issue in the <u>Corder</u> case. [ECF No. 2, First Am. Class Action Compl., ¶ 12(d); ECF No. 75 at 3 n.6 (citing each lease with the market enhancement royalty provision)]. Indeed, the Fourth Circuit in <u>Corder</u> held those provisions are governed by, and satisfy, <u>Tawney</u> requirements. Therefore, these leases would be excluded from the class definition in the <u>Wright</u> action. There is also a market enhancement royalty provision in the <u>Wright</u> action that differs from <u>Corder</u>'s, <u>see</u> ECF No. 2, First Am. Class Action Compl., ¶ 12(d), and, none of

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION
_____

Goodno's leases have a market enhancement royalty provision similar to this one. Finally, the Braxton Minerals action contains 27 leases leases, JJGLG being party to two leases that include a market enhancement royalty provision.

The Goodno action involves two leases with an identical in-kind royalty provision. The Wright action includes leases with flat rate royalty provisions [1:20cv222, ECF Nos. 2-51, 2-56, 2-59, 2-60], while the Goodno and Braxton Minerals actions explicitly exclude them. Leases with flat rate royalty provisions require a different analysis as they are not subject to Tawney and are instead governed by West Virginia Code § 22-6-8(e). SWN Prod. Co., LLC v. Kellam, 875 S.E.2d 216, 225 (W. Va. 2022) ("conclud[ing] that neither Wellman nor Tawney are applicable to an analysis of the "at the wellhead" language contained in West Virginia Code § 22-6-8(e)."); see also Corder v. Antero Res. Corp., No. 1:18cv30, 2021 WL 1912383, at *11 (N.D. W. Va. May 12, 2021). Put simply, there are not enough common questions of law and fact amongst the Braxton Minerals, Goodno, and Wright actions to justify consolidation.

Because these breach of contract actions do not arise from the same lease language, a joint trial would confuse the issues and would not promote judicial economy. Moreover, all three actions are brought by a class action complaint. It is well-known that, in

**MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION**

order to certify a class under Rule 23(a) of the Federal Rules of Civil Procedure, Plaintiffs must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In order to obtain class certification under Rule 23(b)(3), Plaintiffs must additionally demonstrate that "questions of law or fact common to the class members predominate over any questions affecting only individual [class] members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Without performing the obligatory "rigorous" analysis to determine whether the class requirements are met, EQT Production Co. v. Adair, 764 F.3d 347, 352 (4th Cir. 2014), the Court is mindful of the plaintiffs' burden to show commonality and typicality under Rule 23. The risk of prejudice in this regard, and against the parties at trial, weighs against consolidating the Braxton Minerals, Goodno, and Wright actions. Because individualized analysis is required for each lease and royalty provision, and each action contains distinct leases and royalty provisions, the Court finds these cases lack the requisite common question of law or fact for consolidation.

MEMORANDUM OPINION AND ORDER DENYING CONSOLIDATION

V. <u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 51, 5:20cv100] filed by Plaintiffs Sandra Goodno, et al.; *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 49, 1:20cv222] filed by Plaintiffs Patrick Wright, et al.; and *Plaintiffs' Motion to Consolidate Related Cases* [ECF No. 20, 1:21cv119] filed by Plaintiffs Braxton Minerals III, LLC, et al.

It is so **ORDERED.**

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record.

**DATED:** September 27, 2023

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA