IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

PATRICK MICHAEL WRIGHT,
PATRICIA SUSAN WRIGHT,
DEBORAH ANN COX,
RICHARD L. ARMSTRONG,
DONALD R. REYNOLDS, and
DEBORAH L. WYCKOFF,

      Plaintiffs,

    v.                                  CIVIL NO. 1:20-CV-222
                                           (KLEEH)

ANTERO RESOURCES CORPORATION,

      Defendant.

MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

Pending before the Court is a partial motion to dismiss the third amended complaint. For the reasons discussed below, the motion is **GRANTED**.

### I.   PROCEDURAL HISTORY

On September 10, 2020, Plaintiffs Patrick Michael Wright, Patricia Susan Wright, Deborah Ann Cox, Richard L. Armstrong, Donald R. Reynolds, and Deborah L. Wyckoff ("Plaintiffs") filed a complaint against Defendant Antero Resources Corporation ("Antero"). The complaint has now been amended three times. The case was stayed between August 2021 and February 2023, pending a decision by the United States Court of Appeals for the Fourth Circuit in <u>Corder v. Antero Resources Corp.</u>, 57 F.4th 384 (4th

WRIGHT V. ANTERO                                                1:20-CV-222

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

Cir. 2023).  Now pending is a partial motion to dismiss the third amended complaint.  In the motion, Antero asks the Court to dismiss Counts Two and Three.  The motion is fully briefed and ripe for review.

## II.  STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted."  In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint."  Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or

WRIGHT V. ANTERO                                              1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

the applicability of defenses." <u>Republican Party of N.C. v.
Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). Dismissal is
appropriate only if "it appears to a certainty that the plaintiff
would be entitled to no relief under any state of facts which could
be proven in support of his claim." <u>Johnson v. Mueller</u>, 415 F.2d
354, 355 (4th Cir. 1969) (citation omitted).

### III.  FACTUAL BACKGROUND

Plaintiffs allege that they are parties to numerous oil and
gas leases with Antero, which they categorize as (1) flat-rate
leases, (2) market enhancement leases, and (3) gross production
leases.  Plaintiffs seek to certify a class of persons and entities
to whom Antero has paid royalties on natural gas products from
wells in West Virginia.  They allege the following: breach of
contract relating to the market enhancement and gross production
leases (Count One), breach of contract relating to the flat-rate
leases (Count Two), and violation of W. Va. Code § 22-6-8, which
relates to the flat-rate leases (Count Three).

### IV.  LEGAL BACKGROUND

A flat-rate oil and gas lease "require[s] the producer to pay
the royalty owner a set royalty per well, per year, whether that
well produces oil and gas or not." <u>Romeo v. Antero Res. Corp.</u>,
No. 23-589, 2024 WL 4784706, at *14 n.27 (W. Va. Nov. 14, 2024)
(Walker, J., dissenting).  The West Virginia Legislature (the

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

"Legislature") has aimed to discourage the production of oil and gas pursuant to flat-rate leases.  See W. Va. Code § 22-6-8(b) (2018) (declaring "that it is the policy of this state, to the extent possible, to prevent the extraction, production or marketing of oil and gas under a lease . . . providing a flat well royalty or any similar provisions for compensation"); see also id. § 22-6-8(a)(2) (stating that the "continued exploitation of the natural resources of this state in exchange for such wholly inadequate compensation is unfair, oppressive, works an unjust hardship on the owners of the oil and gas in place, and unreasonably deprives the economy of the State of West Virginia of the just benefit of the natural wealth of this state").

The Legislature first enacted a "Flat-Rate Statute" in 1982, which was codified at W. Va. Code § 22-4-1 (1982).  It subsequently recodified the statute without amendment at W. Va. Code § 22B-1-8 (1985), before recodifying it a final time without amendment at W. Va. Code § 22-6-8 (1994) (the "1994 Flat-Rate Statute").  In enacting the Flat-Rate Statute, the Legislature recognized that it could not directly interfere with existing contracts.  See W. Va. Code § 22-6-8(a)(4) (1994).  Instead, it opted to utilize its "police power" to prohibit the issuance of well permits on flat-rate leases unless the lessee swore by affidavit that it would pay the lessor no less than one-eighth "of the total amount paid to or

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

received by or allowed to [the lessee] at the wellhead for the oil or gas so extracted, produced or marketed . . . ."  Id. at §§ 22-6-8(a)(4) and (d).  At the time when the Flat-Rate Statute was enacted, oil and gas sales occurred "at the wellhead," which is the point where the product first emerges from the ground.  See Leggett v. EQT Prod. Co., 800 S.E.2d 850, 857 (W. Va. 2017) ("Leggett II"), superseded by statute on other grounds, W. Va. Code § 22-6-8 (2018).  As a result of industry deregulation in recent years, oil and gas are now sold downstream from the wellhead.  See id.  This change has enhanced the sales price of oil and gas because the products are now marketable and usable when first sold.  See id.  The expenses incurred between production and the point of sale are referred to as "post-production costs."[1] See id.

In 2001, in Wellman v. Energy Resources, Inc., while analyzing certain oil and gas leases not subject to the Flat-Rate Statute, the Supreme Court of Appeals of West Virginia (the "Supreme Court") held, "If an oil and gas lease provides for a royalty based on proceeds received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring

---

[1] Post-production include "expenses to 'clean' or 'sweeten' the gas, gather and/or compress the gas, and transport the gas," all of which are incurred after the gas is extracted but before it is sold.  See Leggett II, 800 S.E.2d at 857.

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

for, producing, marketing, and transporting the product to the

point of sale." Syl. Pt. 4, Wellman v. Energy Res., Inc., 557

S.E.2d 254 (W. Va. 2001). Five years later, in Estate of Tawney

v. Columbia Natural Resources, L.L.C., again analyzing leases not

subject to the Flat-Rate Statute, the Supreme Court heightened the

duties on a lessee if it seeks to recoup post-production expenses

from a lessor. Under Tawney,

> Language in an oil and gas lease that is
> intended to allocate between the lessor and
> lessee the costs of marketing the product and
> transporting it to the point of sale must
> expressly provide that the lessor shall bear
> some part of the costs incurred between the
> wellhead and the point of sale, identify with
> particularity the specific deductions the
> lessee intends to take from the lessor's
> royalty (usually 1/8), and indicate the method
> of calculating the amount to be deducted from
> the royalty for such post-production costs.

Syl. Pt. 10, Estate of Tawney v. Columbia Nat. Res., L.L.C., 633

S.E.2d 22 (W. Va. 2006).

In 2017, in a case known as "Leggett II,"[2] the Supreme Court

found that the holdings in Wellman and Tawney do not apply to flat-

rate leases, which are subject to the Flat-Rate Statute. Leggett

II, 800 S.E.2d at 862. It interpreted the 1994 Flat-Rate Statute

as allowing lessees to take "all reasonable post-production

---

[2] The Supreme Court's decision in Leggett II was issued upon
rehearing. The first decision, which was withdrawn, is commonly
referred to as "Leggett I."

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

expenses actually incurred by the lessee." Id. at Syl. Pt. 8; see
also id. at 865 (explaining that the "at the wellhead" language in
the statute is "clearly indicative of a legislative intention to
value the royalties paid pursuant to the statute based on the
unprocessed wellhead price"). With respect to flat-rate leases,
the Leggett II court disclaimed the application of implied duties,
specifically referencing the covenant to market. Id. at 861–62.
The court recognized the inherent differences between freely-
negotiated leases (which are subject to Wellman and Tawney) and
leases that are "encumbered by operation of statute[.]" Id. at
868–69. It indicated that the Legislature may wish to resolve
these "tensions":

> The leases in Wellman and Tawney and other
> such leases obviously are unaffected by the
> statute and therefore this opinion.
> Accordingly, we find no inconsistent result
> where two distinct types of leases of
> completely differing character are involved,
> one type of which is the product of free and
> open negotiation and the other encumbered by
> operation of statute. Nevertheless, this
> Court recognizes the inherent tension between
> holders of leases subject to our
> interpretation of West Virginia Code § 22-6-8
> and those freely-negotiated leases which
> remain subject to the holdings of Wellman and
> Tawney. We therefore implore the Legislature
> to resolve the tensions as it sees fit
> inasmuch as this Court may only act within the
> confines of our constitutional charge.

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

<u>Id.</u>  Justice Margaret L. Workman wrote a concurring opinion, also

inviting the Legislature to take action:

> What both the foregoing and the majority's
> opinion underscores is the necessity of the
> Legislature to address these policy-laden
> issues and declare, by statute, the will of
> the State's citizenry in this regard.  This
> Court is constrained to our canons of
> statutory construction and does not make
> policy.  "This Court does not sit as a
> superlegislature, commissioned to pass upon
> the political, social, economic or scientific
> merits of statutes pertaining to proper
> subjects of legislation.  It is the duty of
> the Legislature to consider facts, establish
> policy, and embody that policy in legislation.
> It is the duty of this Court to enforce
> legislation unless it runs afoul of the State
> or Federal Constitutions."  Syl. Pt. 2,
> <u>Huffman v. Goals Coal Co.,</u> 223 W.Va. 724, 725,
> 679 S.E.2d 323, 324 (2009).  Where the
> Legislature's inaction in the face of such
> significant changes in the industry leaves
> this Court to intuit its intentions and/or
> retrofit outdated statutory language to
> evolving factual scenarios, the will of the
> people is improperly disregarded.

<u>Id.</u> at 871 (Workman, J., concurring).

In 2018, during the following legislative session, the

Legislature amended the 1994 Flat-Rate Statute to require lessees

who permitted wells to pay lessors with flat-rate leases

> not less than one eighth of the gross
> proceeds, free from any deductions for post-
> production expenses, received at the first
> point of sale to an unaffiliated third-party
> purchaser in an arm's length transaction for
> the oil or gas so extracted, produced or

8

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

> marketed before deducting the amount to be
> paid to or set aside for the owner of the oil
> or gas in place, on all such oil or gas to be
> extracted, produced or marketed from the well.

W. Va. Code § 22-6-8(e) (2018) (the "2018 Flat-Rate Statute").[3]

The Legislature removed the "at the wellhead" language and made it clear that a lessee owes a lessor one-eighth of gross proceeds, free from any deductions for post-production expenses. *See* *SWN Prod. Co., LLC v. Kellam*, 875 S.E.2d 216, 223-24 (W. Va. 2022) (explaining that, following *Leggett II*, the Legislature amended the language of W. Va. Code § 22-6-8(e) "to state that royalty payments under that section were to be 'free from any deductions for post-production expenses'"). Both the 1994 Flat-Rate Statute and the 2018 Flat-Rate Statute provide a cause of action for lessors to enforce the statute. *See* W. Va. Code § 22-6-8(f) (1994); W. Va. Code § 22-6-8(f) (2018). With this background in mind, the Court finds that Antero's partial motion to dismiss must be granted.

## V. DISCUSSION

As discussed herein, the Court finds that Counts Two and Three must be dismissed as a matter of law. Count Two does not sufficiently plead a breach of the flat-rate leases, and the relief

---

[3] The 2018 Flat-Rate Statute originated as Senate Bill 360.

WRIGHT V. ANTERO                                              1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

Plaintiffs seek in Count Three is not available under the applicable Flat-Rate Statute.

> **A.   Count Two must be dismissed because Plaintiffs do not sufficiently plead a breach of contract with respect to the flat-rate leases.**

In Count Two, which is a breach of contract claim relating to the flat-rate leases, Plaintiffs allege that Antero has underpaid royalties by deducting post-production costs, utilizing a weighted average sales price, and failing to market the hydrocarbons produced from the wells at a reasonable price. Antero argues that Plaintiffs do not plead a claim based on the royalty provisions included in the flat-rate leases. Antero asserts that Plaintiffs plead facts that are untethered to any lease language. In response, Plaintiffs argue that the underlying leases were effectively modified in writing by certain affidavits submitted by Antero or its predecessors to the State of West Virginia in exchange for new or modified drilling permits. Plaintiffs argue that they are third-party beneficiaries of the modifications to the royalty provisions of such leases and may properly assert claims for the breach of those modified terms.

The Court agrees with Antero's position here. Plaintiffs do not allege that Antero failed to pay royalties in a manner consistent with the royalty provisions contained in the flat-rate

WRIGHT V. ANTERO                                          1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

leases.  They do not allege that Antero paid them less than the flat-rate amount set forth in the flat-rate leases.  They do not allege that Antero violated any other term of the flat-rate leases. Neither the Flat-Rate Statute nor the permits obtained by Antero "effectively modified" the flat-rate leases at issue.  The Legislature did not (and cannot) enact a law "impairing the obligation of a contract," so it instead chose to regulate the issuance of well permits associated with flat-rate leases.  See W. Va. Code § 22-6-8(a)(4) (1994); W. Va. Code § 22-6-8(a)(4) (2018). Further, as Antero points out, there was no "bargain" between Antero and the State of West Virginia concerning the flat-rate leases.  The State's regulation of oil and gas producers does not create a contractual relationship between the producer and the regulator.  Accordingly, Plaintiffs cannot be third-party beneficiaries.  Here, in Count Three, Plaintiffs plead a separate claim for violation of the 2018 Flat-Rate Statute.  Accordingly, the Court finds it appropriate to, and hereby does, **DISMISS** Count Two.

> **B.   Count Three must be dismissed because the 2018 Flat-Rate Statute is not retroactive, and the relief sought by Plaintiffs is not available under the 1994 Flat-Rate Statute.**

In Count Three, Plaintiffs allege that Antero violated the 2018 Flat-Rate Statute by deducting post-production costs,

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

utilizing a weighted average sales price, and failing to market the hydrocarbons produced from the wells at a reasonable price. Antero argues that Count Three fails because Plaintiffs' allegations are based on alleged violations of a version of the Flat-Rate Statute that does not apply to the flat-rate leases at issue in this case.

As discussed above, there are two relevant versions of the Flat-Rate Statute: the 1994 Flat-Rate Statute and the 2018 Flat-Rate Statute. Antero argues (1) that the 2018 Flat-Rate Statute does not apply to Plaintiffs' claims because Antero did not obtain well permits subject to the 2018 Flat-Rate Statute, (2) the 2018 Flat-Rate Statute does not apply retroactively, and (3) Plaintiffs' claim is subject to a one-year statute of limitations. In their response, Plaintiffs appear to agree with Antero's first argument, but they contend that the 2018 Flat-Rate Statute is retroactive, and they oppose the statute of limitations argument.

     1.    **With respect to the wells identified by Plaintiffs as being subject to flat-rate leases, Antero did not obtain any well permits after May 31, 2018.**

The public record indicates that Antero did not obtain any well permits after May 31, 2018, with respect to the wells

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

identified by Plaintiffs as being subject to flat-rate leases.[4] Pursuant to Rule 201 of the Federal Rules of Civil Procedure, the Court takes judicial notice of this fact.  The 2018 Flat-Rate Statute went into effect on May 31, 2018.  Each of the alleged units had well permits that were issued prior to May 31, 2018, each well was producing gas prior to May 31, 2018, and no new permits have been issued since May 31, 2018.  See Mot. to Dismiss, App. A, at ECF No. 114-2.  Accordingly, for the flat-rate leases at issue to be subject to the 2018 Flat-Rate Statute, the 2018 Flat-Rate Statute must apply retroactively.  As explained below, it does not.

> **2.    The 2018 Flat-Rate Statute does not apply
> retroactively because the Legislature did not
> expressly indicate such an intent.**

In West Virginia, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective[.]"  W. Va. Code § 2-2-10(b)(6); see also Syl. Pt. 2, Martinez v. Asplundh Tree Expert Co., 803 S.E.2d 582 (W. Va. 2017) ("The presumption is

---

[4] Plaintiffs' "upon information and belief" allegations regarding Antero's well permits are plainly contradicted by public record filings that this Court can properly consider on a motion to dismiss.  See Holtzapfel v. Wells Fargo Bank, N.A., 2:12-00937, 2013 WL 1337283, at *4 (S.D. W. Va. Mar. 29, 2013) (granting motion to dismiss where plaintiff's allegation that defendant failed to provide her with notice of the foreclosure sale was contradicted by public records that notice was in fact sent to plaintiff).

WRIGHT V. ANTERO                                                    1:20-CV-222

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect."). The Supreme Court has long recognized that this presumption applies when the retroactive application of a statute would interfere with existing contracts:

> No statute, however positive, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared; and the courts will apply new statutes only to future cases unless there is something in the very nature of the case or in the language of the new revision which shows that they were intended to have a retroactive operation.

Syl. Pt. 3, Rogers v. Lynch, 29 S.E. 507 (W. Va. 1897).

Here, there appears to be no dispute that the 2018 Flat-Rate Statute does not expressly provide that it is retroactive. Rather, Plaintiffs argue that the Court should find that the 2018 Flat-Rate Statute applies retroactively because it merely clarified the Legislature's intent. Plaintiffs urge the Court to make such a finding based on the statute's legislative history and the invitation by the Supreme Court in Leggett II, which prompted the 2018 statutory change.

14

WRIGHT V. ANTERO                                          1:20-CV-222

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

Some courts have found that the 2018 Flat-Rate Statute is not retroactive. In this Court, the Honorable Irene M. Keeley found that the 2018 Flat-Rate Statute does not overcome the presumption against retroactivity because it does not indicate "by clear, strong, and imperative words" that the Legislature intended for it to do so. Corder v. Antero Res. Corp., No. 1:18cv30, 2021 WL 1912383, at *13 (N.D.W. Va. May 12, 2021), affirmed in part, vacated in part, and remanded on other grounds, 57 F.4th 384 (4th Cir. 2023). Likewise, the Circuit Court of Ritchie County, West Virginia, held that the 2018 Flat-Rate Statute is not retroactive because it "does not include any language demonstrating an intent of retroactive application, as it does not state that it applies to permits issued before its effective date." Exh. 1 to Mot. to Dismiss, Williams Order, at ECF No. 114-3, pg. 11. The court also pointed out that the 2018 Flat-Rate Statute provides that "no permit shall be hereafter issued," which indicates that the Legislature intended it to apply prospectively. Id. at pg. 8 (explaining that "the permit prohibition only applies to permits 'hereinafter issued' and does not purport to alter permits issued prior to the effective date of the amendment").

Plaintiffs argue that an amended statute may apply retroactively when the amendment exists only to clarify what was originally intended by the Legislature, which is, they argue, what

WRIGHT V. ANTERO                                          1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

occurred here.  Some courts, applying this reasoning, have held that the 2018 Flat-Rate Statute is retroactive.  In this Court, the Honorable John Preston Bailey found that the 2018 Flat-Rate Statute was a "clarifying amendment in a heavily regulated field, requested by the West Virginia Supreme Court[.]"  Kay Co., LLC v. EQT Prod. Co., No. 1:13-CV-151, 2018 WL 11411335, at *9 (N.D.W. Va. Nov. 14, 2018).  In addition, the Circuit Court of Doddridge County, West Virginia, found that the "intent of the legislation is discerned from the Supreme Court's request for legislative action as well as the note accompanying Senate Bill 360 responding to the Supreme Court's call for clarifying legislation."  Exh. 4 to Response, Sweeney Order, at ECF No. 115-4, pg. 12.  The Circuit Court of Wetzel County, West Virginia, reached the same conclusion. Exh. 5 to Response, Cramer Order, at ECF No. 115-5, pg. 18.

Plaintiffs argue that the Legislature's intent to clarify is evidenced by the following: (1) the inconsistent rulings reached in Leggett I and Leggett II, (2) the express invitation in Leggett II to "clarify" the meaning of W. Va. Code § 22-6-8, (3) the introduction of Senate Bill 360 during the following legislative session, (4) a legislative note in Senate Bill 360 stating that "[t]he purpose of this bill is to clarify the royalty owed to a royalty owner in an oil and gas lease," (5) statements made to such effect in the legislative discussion of Senate Bill 360, and

WRIGHT V. ANTERO                                      1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

(6) "the overwhelming passage by both the Senate and House of Senate Bill 360 with the understanding of its intended purpose." Response, ECF No. 115, at pg. 18.

After reviewing all of the arguments raised by the parties, the Court finds that the 2018 Flat-Rate Statute is not retroactive. Again, as discussed, "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." See W. Va. Code § 2-2-10(b)(6). No such express language exists in the 2018 Flat-Rate Statute. In addition, the 2018 Flat-Rate Statute includes language that no permit "shall hereafter be issued," which evidences prospective intent. See W. Va. Code § 22-6-8(d) (2018). The Court again notes the long-standing principle under West Virginia law that a statute shall not be "construed as designed to interfere with existing contracts." See Syl. Pt. 3, Rogers v. Lynch, 29 S.E. 507. Retroactive application of the 2018 Flat-Rate Statute would interfere with existing contracts. As discussed above, instead of enacting a law "impairing the obligation of a contract," the Legislature, in both the 1994 and 2018 versions of the Flat-Rate Statute, chose to exercise its police power and regulate the issuance of well permits associated with flat-rate leases. See W. Va. Code § 22-6-8(a)(4)(1994); W. Va. Code § 22-6-8(a)(4)(2018). Both the Supreme Court and the Fourth Circuit have recognized that the 2018 Flat-Rate Statute was an

WRIGHT V. ANTERO                                           1:20-CV-222

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

"alter[ation]" or "amend[ment]" of the law, as opposed to a clarification. See Kellam, 875 S.E.2d at 223–24; Corder, 57 F.4th at 395 n.7.  For all of these reasons, the Court cannot find that the 2018 Flat-Rate Statute applies retroactively.

Because the plain text of the 2018 Flat-Rate Statute is unambiguous, it is unnecessary for the Court to analyze its legislative history.  See Ctr. for Env't Health v. Regan, 103 F.4th 1027, 1038 n.12 (4th Cir. 2024) ("[L]egislative history is irrelevant to the interpretation of an unambiguous statute."); Syl. Pt. 3, Longwell v. Bd. of Educ. of Cnty. of Marshall, 583 S.E.2d 109 (W. Va. 2003) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.").  Even if the Court were to consider the legislative history, however, the legislative history does not indicate a retroactive intent.  First, the 2018 Flat-Rate Statute became effective 90 days from passage, which is evidence of an intent for the legislation to apply prospectively.  Second, while the initial version of Senate Bill 360 included a note indicating that the bill was intended to "clarify" the royalty owed, the language was removed and replaced with a caption stating that the bill was "modifying the permit issuance prohibition." Third, during discussion and debate before the full Senate, Judiciary Chairman Charles S. Trump stated, "I think its

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

application will be prospective because the whole permit prohibition is maintained in the bill." Debate on SB 360, 2018 Leg., Reg. Sess. 6 (W. Va. Feb. 28, 2018), docketed at ECF No. 682-3 in Kay Co., Case No. 1:13-CV-151 (N.D.W. Va.).

Further, the Supreme Court's invitation to enact legislation does not necessitate a finding that the amendment was merely a clarification. The "tensions" to which the Supreme Court was referring were between (1) holders of flat-rate leases, to which Wellman and Tawney do not apply, and (2) holders of freely-negotiated leases, which are subject to Wellman and Tawney. Leggett II, 800 S.E.2d at 868–69. The Legislature then resolved those tensions by changing — not clarifying — the Flat-Rate Statute to expressly prohibit the deduction of post-production costs from royalties relating to flat-rate leases. In other words, the Legislature took action to ensure that holders of flat-rate leases were afforded the same benefits that are afforded to holders of leases subject to Wellman and Tawney.

Prior to the enactment of the 2018 Flat-Rate Statute, as the Court has discussed, the operative statute was the 1994 Flat-Rate Statute. According to the parties, the text of the 1994 Flat-Rate Statute mirrored the statute's text in 1982. Wellman and Tawney were decided in 2001 and 2006. It would not make sense to interpret the 2018 Flat-Rate Statute as a clarification of what the

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

Legislature intended in 1982.  In 1982, Wellman and Tawney had not been decided, and the industry changes moving the point of sale had not occurred.  The 2018 Flat-Rate Statute was a legislative change, not merely a clarification.

Because the 2018 Flat-Rate Statute is not retroactive, Plaintiffs' flat-rate leases are subject to the 1994 Flat-Rate Statute, which requires Antero to pay lessors on a value "at the wellhead" and, pursuant to Leggett II, permits Antero to take "all reasonable post-production expenses actually incurred."  Id. at 868; W. Va. Code § 22-6-8(e) (1994).  Plaintiffs have not alleged that post-production expenses taken by Antero were unreasonable. Accordingly, to the extent that Plaintiffs argue that Antero has violated the law by taking post-production expenses, the argument fails as a matter of law.

Nonetheless, Plaintiffs maintain that even if the 2018 Flat-Rate Statute does not apply retroactively, some of their allegations in Count Three survive.  In Count Three, Plaintiffs assert that Antero violated the Flat-Rate Statute (1) by "failing to pay Plaintiffs and the Class all of the royalties they are owed by utilizing the [weighted average sales price or] WASP determined by Antero"; (2) by "failing to sell Plaintiffs' and Class's natural gas, oil, natural gas liquids and/or all other by products at a reasonable price"; and (3) by "failing to pay Plaintiffs and the

WRIGHT V. ANTERO                                                 1:20-CV-222

### MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]

Class the correct royalties owed from the production of the wells described by calculating the royalties on inaccurate and improper sales figures."  Third Am. Compl., ECF No. 110, at ¶¶ 495-97.

Antero correctly asserts that these remaining allegations are derived from alleged violations of the implied duty to market set forth in Wellman and Tawney, not the Flat-Rate Statute.  As discussed, in Leggett II, the Supreme Court disclaimed the application of implied duties — specifically referencing the implied covenant to market — to leases governed by the 1994 Flat-Rate Statute.  See Leggett II, 800 S.E.2d at 861-62.  Because the implied duty of marketability does not apply, and Antero is permitted to take "all reasonable post-production expenses actually incurred," id. at 868, Plaintiffs fail to state a claim, and Count Three is **DISMISSED** in its entirety.[5]

### VI.   CONCLUSION

For the reasons discussed, the Court agrees with Antero that Counts Two and Three should be dismissed as a matter of law. Accordingly, the partial motion to dismiss is **GRANTED** [ECF No. 114], and Counts Two and Three are **DISMISSED WITH PREJUDICE**.  The parties are **DIRECTED** to meet and confer and, on or before **March**

---

[5] Because the Court has found that Counts Two and Three should be dismissed, the Court need not assess Antero's separate arguments for dismissal of claims under the Post and Payne leases or pursuant to the applicable statute of limitations.

WRIGHT V. ANTERO                                                    1:20-CV-222

**MEMORANDUM OPINION AND ORDER GRANTING PARTIAL MOTION
TO DISMISS THE THIRD AMENDED COMPLAINT [ECF NO. 114]**

**31, 2025,** file a jointly proposed schedule to govern the case

moving forward.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum

Opinion and Order to counsel of record.

DATED: March 17, 2025

_Tom 8 Kleeh_
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA